## L. W. PEARCE V. THE STATE.

### No. 10339. Delivered November 17, 1926.

**1.—Manslaughter—Voir Dire Examination—Of Jury—Latitude Allowed.**

Where, on a trial for murder, which resulted in a conviction for manslaughter, appellant asked veniremen, on their voir dire examination, if they were members of the Ku Klux Klan, and the court instructed such jurors that they would not be required to answer such questions and they did refuse to answer, this was error. The appellant was entitled to this information in order to properly exercise his peremptory challenges. This court has several times held that it was error to refuse to permit the appellant to interrogate the veniremen with reference to this matter. See Belcher v. State, 257 S. W. 1097; Welk v. State, 257 S. W. 1098; and Belcher v. State, 258 S. W. 816.

**2.—Same—Evidence—Hearsay—Improperly Admitted.**

Where, on a trial for murder, the court permitted the state, over the objections of appellant, to prove by a witness that the deceased had told witness, in the absence of appellant on the day preceding the homicide, that the appellant had told him, the deceased, that he was going to kill him if he didn't stay away from down there. Such testimony was hearsay, and improperly admitted. See Howard v. State, 76 Tex. Crim. Rep. 300, and other cases cited.

**3.—Same—Evidence—Of Collateral Matters—Properly Admitted.**

Appellant complains of the admission of testimony by the state showing that on the day preceding the homicide the appellant cursed, abused, and threatened, and assaulted one Harry Young, a striker, for trespassing upon the property of the railroad company, because same involved another offense for which he was not on trial. Ordinarily such character of proof is not admissible, but under the facts and circumstances appearing from the record in this case, the admission of this testimony was not error.

**4.—Same—Evidence—Animus of Witness—Always Admissible.**

It is always permissible for the appellant to show the interest, prejudice and animus of a state witness, and the witness Young, having testified against appellant, it was error to deny him the right to cross-examine such

witness and to show his animus toward the rangers and guards who were protecting the railroad company's property and employees at the time of the homicide, appellant being one of such rangers. See Branch's Ann. P. C., Sec. 163, and cases there cited.

#### 5.—Same—Evidence—Showing Conspiracy—Improperly Excluded.

Where the uncontradicted evidence showed that the deceased, at the time of the homicide, was one among a number of strikers, who were attempting to prevent the railroad from employing labor, it was error to deny to appellant the right to prove acts and conduct on the part of said strikers involving assaults and threats directed to rangers and others who were guarding the railroad property, he being one of the number. This testimony tended strongly to establish a conspiracy between deceased and other strikers, and the fact that it was not shown that the deceased actually participated in said threats and assaults would not render said testimony inadmissible. See Dodson v. State, 44 Tex. Crim. Rep. 404, and other cases cited.

#### 6.—Same — Evidence — Condition and Declarations of Defendant — Res Gestae — Erroneously Excluded.

The testimony of the witness Patterson, a ranger, offered by appellant, to the effect that he arrived at the scene of the killing within about 15 minutes after the killing and before the body of the deceased was moved, and while appellant was standing near the body with his pistol drawn, as to appellant's condition and statements made by him to the witness at that time. This testimony was clearly res gestae, and should have been admitted. See Branch's Ann. P. C., Secs. 83 and 86, and cases there cited.

Appeal from the District Court of Hopkins County on a change of venue from Smith County. Tried below before the Hon. J. M. Melson, Judge.

Appeal from a conviction of manslaughter, penalty five years in the penitentiary.

The opinion states the case.

*Butler, Price & Maynor* of Tyler, *J. H. Beaver* of Winnsboro and *Crosby & Estes* of Greenville, for appellant.

On hearsay declarations of deceased, appellant cites:

Orner v. State, 143 S. W. 935.

Shaffer v. State, 151 S. W. 1061.

Denaner v. State, 127 S. W. 201.

Brittain v. State, 85 S. W. 275.

Howard v. State, 76 Tex. Crim. Rep. 300.

Mercado v. State, 96 Tex. Crim. Rep. 450.

Jamail v. State, 99 Tex. Crim. Rep. 127.

On the exclusion of testimony showing conspiracy on part of strikers, appellant cites:

Branch's Crim. Law, Sec. 473.

Shelton v. State, 277 S. W. 663.

Messemer v. State, 222 S. W. 584.

Hysaw v. State, 155 S. W. 941.
Sprangler v. State, 41 Tex. Crim. Rep. 430.
Childers v. State, 30 Tex. Crim. App. 194.

*Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

BAKER, Judge.—The appellant was convicted in the District Court of Hopkins County for the offense of manslaughter, and his punishment assessed at five years in the penitentiary.

The appellant was indicted in the District Court of Smith County, being charged with the offense of murdering one Clayton Hudson about the 17th day of October, 1922. The venue was changed to Wood County, and from Wood County to Hopkins County. The record discloses that the deceased, prior to the homicide, was an employe of the railroad company and, together with many other employees, had gone on a strike in the city of Tyler and had formed a picket around the property of the railroad company with a view of preventing said company from employing laborers to take the places vacated by the strikers. The appellant was a ranger who, in company with other rangers and officers, was sent there for the purpose of preventing the strikers from interfering with the laborers sought to be used in replacing the positions left by the strikers, and to prevent said strikers from damaging the property of said railroad company.

It was the contention of the state that the appellant, without cause or provocation, shot and killed the deceased. The appellant defended upon the ground that he had been informed of the seriousness of conditions at Tyler. caused by the strike, prior to reaching that place and thereafter; that he had been informed that the strikers had killed one party whom the railroad company had sent to do some work at Tyler, and had severely beaten several more; that he had been warned of the danger of said strikers to the officers attempting to guard said premises and the employees working for the company; that he knew the deceased and knew that he was a striker and one of the pickets around the property of the railroad company and working in connection with the strikers at said time and place; that he had also been informed that the strikers had armed themselves and he had seen a pistol taken from one of said strikers near the scene of the homicide; that just immediately prior to the homicide the deceased had cursed and abused the rangers, and that he, appellant, discovered the deceased armed with a rock and made him throw it down; and that as he, appellant, turned to walk away he heard the deceased say, "I will kill the son-of-a-

bitch now," and when he turned around the deceased was rising in a threatening attitude, from which the appellant believed that the deceased was then preparing to take his life or do him serious bodily injury, and in his own self defense he shot and killed the deceased.

The fact that the transcript contains 437 pages and embraces 99 bills of exception renders it impractical for us to attempt to discuss separately the many issues raised herein. In bill of exception No. 1 complaint is made to the refusal of the court to permit appellant to ask the veniremen if they belonged to the Knights of the Ku Klux Klan. The bill discloses that the appellant had been informed that said Klan was aiding and in sympathy with the strike out of which the homicide grew, and had discussed his case in the lodge room of its members. It further appears from the bill that when said question was propounded to the veniremen as to their membership therein, the court instructed them that they did not have to answer said question unless they wanted to; thereupon the venireman, Sheppard, refused to answer said question and the court declined to require him or any venireman to answer same. This ruling was clearly erroneous and the appellant was entitled to this information in order to exercise properly his peremptory challenges. This court has several times held that it was error to refuse to permit the appellant to interrogate the veniremen with reference to this matter. Belcher v. State, 257 S. W. 1097; Welk v. State, 257 S. W. 1098; Belcher v. State, 258 S. W. 815.

Bills of exception 3 and 4 complain of the action of the court in permitting the state, while attempting to develop its case in chief, to prove by the witness, Allen, that the deceased told him, in the absence of the appellant, on the day preceding the homicide, that the appellant had told him, deceased, that he was going to kill him if he didn't "stay away from down there," evidently referring to the shops and property of the railroad company. Appellant's counsel contend that this testimony was hearsay of the purest and simplest kind. We know of no decision or rule authorizing the admission of this testimony, as presented in this bill, and the admission of same was clearly erroneous. Howard v. State, 76 Tex. Crim. Rep. 300, 174 S. W. 615; Mercado v. State, 96 Tex. Crim. Rep. 450, 258 S. W. 180; Jamail v. State, 99 Tex. Crim. Rep. 127, 268 S. W. 437; Cox v. State, 103 Tex. Crim. Rep. 67, 279 S. W. 838.

In bills Nos. 7, 9, 10 and 11 complaint is made to the action of the court in permitting the state to introduce evidence to the effect that on the day preceding the homicide the appellant cursed, abused, threatened and assaulted one Harry Young, a

striker, for trespassing upon the property of the railroad company. Appellant's counsel insist that this evidence was foreign to any issue involved in the offense for which he was on trial and was attempting to prove a distinct and extraneous crime, and was prejudicial to the rights of the appellant. We are of the opinion that, as presented, there is no error shown in the admission of this testimony.

Bill of exception No. 8, complaining of the refusal of the court to permit the appellant, on cross examination, to show the feeling of the witness, Young, toward the rangers and guards protecting the railroad company's property and employees, shows error. It is always permissible for the appellant to show the interest, prejudice and animus of a state's witness, when the testimony of such witness has been unfavorable to him. Branch's Ann. P. C., Sec. 163, citing Mason v. State, 7 Tex. Crim. App. 623; Edwards v. State, 172 S. W. 233. Also see Cryer v. State, 276 S. W. 925.

There are many bills of exception complaining of the refusal of the court to permit the appellant to show the conduct and assaults of other strikers prior to the homicide in the attempt to prevent the railroad company from employing labor to carry on the work and fill positions left by the strikers. This conduct, involving said assaults and threats of the strikers, was shown to be known or heard of by the appellant at the time of the homicide, and it was an undisputed fact that the deceased was a striker and was acting with the other strikers in attempting to prevent the railroad company from carrying on its work, and was very antagonistic to the rangers and officers who were attempting to protect said laborers and property. We think this character of testimony was clearly admissible and should have gone to the jury, as it tended strongly to show a conspiracy between the deceased and other strikers to prevent the appellant and other officers from discharging their duties and prevent the company from carrying on its business, and to resort to force, if necessary. The fact that it was not positively shown that deceased actually participated in said assaults would not render said testimony inadmissible, it being shown that at the time of the homicide in question, and prior thereto, he was very active in picketing for, and acting with, the other strikers in furtherance of the common design, and prior acts of the other strikers so participating would be admissible in this case. Branch's Ann. P. C., Sections 693-694; also see Monday v. State, 90 Tex. Crim. Rep. 8. This evidence was also admissible for the purpose of showing the condition of appellant's mind at the time of the

homicide. Dodson v. State, 44 Tex. Crim. Rep. 404; Nicholson v. State, 91 Tex. Crim. Rep. 383; Ferguson v. State, 95 Tex. Crim. Rep. 212; Sheldon v. State, 277 S. W. 663.

In bill of exception No. 19 complaint is made to the refusal of the court to permit appellant to show by the witness, Patterson, a ranger, that he arrived at the scene of the homicide within about 15 minutes after the killing and before the body of deceased was removed and while appellant was standing near the body with his pistol drawn, and that the appellant had tears in his eyes and was in a highly emotional and nervous state of mind, and that the first thing appellant stated to him was that the deceased called him a "God damned son-of-a-bitch" and was trying to hit him with a rock when he shot deceased. We think this was clearly res gestae, and the court erred in excluding said testimony. Branch's Ann. P. C., Sections 83 and 86, citing Boothe v. State, 4 Tex. Crim. App. 208; Brunet v. State, 12 Tex. Crim. App. 533; Garcia v. State, 156 S. W. 942; Lopez v. State, 166 S. W. 155, and many other authorities. Also see Dowd v. State, 284 S. W. 592.

There are many other errors complained of which are not likely to arise in the same manner as here presented, upon another trial, and for that reason we omit a discussion of same.

For the errors above discussed, we are of the opinion that the judgment of the trial court should be reversed and remanded, and it is accordingly so ordered.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.